## Hugh J. Hamill and James G. Carson, Appellants, *v.* Thomas Firth, Joseph R. Foster and John H. Foster, trading as Firth & Foster Brothers.

*Bailment—Lien—Locatio operis—Agreement—Question for jury.*

Goods were received by a dyer upon the following condition: "All goods received only upon condition that they are subject to a general lien, not only for the dyeing and furnishing thereof, but also for the balance of any former account due." The evidence tended to show that there was a course of dealing between the dyer and C. & Co., by which C. & Co. paid for goods dyed after thirty or sixty days, and that there was constant shifting, new goods coming in to take the place of those which were taken away. *Held,* (1) that it was proper to leave to the jury to determine whether the giving of time was under an agreement by which the customer had an absolute right to take away all his goods, and not to pay for them until the expiration of a specified time, or whether the giving of the time simply related to the bills for those goods which the dyer chose to deliver without enforcing his specific lien, and in reliance upon the general lien given him on the balance of the goods in his hands for the entire amount due him; (2) that it was not error for the court to charge that the dyer did not lose his lien by occasionally or frequently or habitually allowing C. & Co. to take away goods and pay for them after thirty or sixty days, if the course of business was that there was a constant shifting, new goods coming in to take the place of those which were taken away.

Argued March 27, 1896. Appeal, No. 69, Jan. T., 1896, by plaintiffs, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1892, No. 89, on verdict for defendants. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Replevin for cotton goods. Before WILLSON, J.

Firth v. Hamill, 167 Pa. 383.

At the trial it appeared that plaintiffs and defendants were both creditors of the firm of Albert Crenshaw & Co., manufacturers of cotton goods, who failed in the fall of 1892. At the time of their failure a large amount of their goods in course of finishing were in possession of the defendants at their works in Philadelphia, known as the Providence Dye Works. The firm of Crenshaw & Co. assigned to the plaintiffs all their right in these goods. The plaintiffs tendered to the defendants the amount due for the finishing of the goods in question and de-

manded their delivery. This was refused, and the plaintiffs then took possession of the goods by replevin, the defendants claiming the right to the goods under the general lien for the balance of their general account, as well as under a specific lien for the work done on the goods in question. The dyeing orders sent by Crenshaw & Company's customers on blanks furnished by the dyers contained the following notice :

"NOTICE.—All goods received only upon condition that they are subject to a general lien, not only for the dyeing and furnishing thereof, but also for the balance of any former account due."

The court charged in part as follows :

[There is another question which, with the view I take of the case, I feel bound to present to you. I have already said in substance that if the course of dealing between these parties was exhibited, as is claimed by the defendants, by numerous papers, detailing in a clear and distinct form a notice which the defendants relied upon, if you believe there was such a practice, you might infer that the defendants were right in their claim, that part of the case standing by itself. Yet it appears that the case is to be modified somewhat, if you believe there was a distinct arrangement between the defendants and Crenshaw & Co. whereby their dealings were transacted on a different basis, and as I look at the case now, it seems to me, if the arrangement under which the defendant firm undertook to dye the finished goods for Crenshaw & Co. was an arrangement of credit, whereby they undertook to give them a specific credit and deliver their goods to them, and allow them thirty or sixty days or any other time, then they gave up their right of lien under ordinary circumstances. That is, if they agreed to do this work and deliver the articles on which they had done it to Crenshaw & Co., under an arrangement that they would wait thirty or sixty days or any other given time before they were paid, they gave up the right of possession, and having given up that right, they gave up the right of lien.

But in order to make that part of the case, if you believe that was so, operative, you should find in the evidence that which will justify you in believing that was a definite arrangement which was made between the parties ; not that it was a

mere talk about accommodation, not a conversation which took place some time or other when the firm of Crenshaw & Co. wanted a little more accommodation or a little more time and the defendants were willing to give it, but you must find that was the bargain between the two concerns, under which the defendants agreed to do certain work and Crenshaw & Co. agreed as to payment.

I do not consider that the defendants lost any right of lien which they had by simply accommodating the firm of Crenshaw & Co.; they did not lose their right of lien by occasionally or frequently or habitually allowing Crenshaw & Co. to take away goods and pay for them after thirty or sixty or ninety days if the course of business was, as it seems to me to be the case, that there was a constant shifting, new goods coming in to take the place of those which were taken away. It is only on the basis of your seeing in the evidence that which leads you to believe that the defendants entered into a definite agreement with the firm of Crenshaw & Co. that they would do the work for them on credit, and that that continued down to the time when the firm of Crenshaw & Co. failed.

Perhaps the evidence on that point is not as satisfactory or as clear, definite, and emphatic as it ought to be; yet as I look at the case, with the view I take of the law, it seems to me I am bound to leave that question to you.] [1]

It was alleged by appellants that this error was that, in so charging, the court submitted to the jury as a disputed question of fact whether the dealings between Crenshaw & Co. and the defendants had been on a general agreement for credit, when by the testimony that fact was established and there was no testimony to justify an inference to the contrary.

Plaintiffs' point was as follows:

6. Under all the facts of the case the verdict must be for the plaintiffs. *Answer:* This point I refuse. [2]

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*John Scott, Jr., Harrity & Beck* and *L. R. Fletcher* with him, for appellants.—It was error to submit this case to the jury:

McKnight v. Bell, 135 Pa. 358 ; Morton v. Weaver, 99 Pa. 47 , R. R. Co. v. Husson, 101 Pa. 1 ; Selser v. Roberts, 105 Pa. 242.

*Frank P. Prichard,* for appellees.—The inference arising from the notice was strengthened by the admission of the customer that he knew of it, and the case was therefore even stronger than Hamill v. Firth, 167 Pa. 383, in which this court sustained the lien based upon this notice.

It was, to say the least, extremely improbable that the parties who had stipulated in express words for a lien should have contemporaneously agreed that the customers should have the right to take away all his goods upon a time credit without leaving the dyer anything upon which the lien could operate. If, however, the evidence had clearly and positively shown such an anomalous conflict of contracts, the jury would have been at liberty to find for the plaintiffs.  It is clear, however, that the court could not as a matter of law charge the jury that any giving of time on bills for goods delivered was necessarily inconsistent with an agreement for a lien on the goods undelivered, nor could the court as a matter of law determine what the agreement was, there being no written contract, but only a course of dealing.

PER CURIAM, April 6, 1896 :

There was no error in charging as complained of in the first specification, nor in refusing to charge, as requested in plaintiffs' point, recited in the second specification, " that under all the facts in the case the verdict must be for the plaintiffs." The testimony presented mixed questions of law and fact, and hence it was necessary for the court to submit the evidence to the jury with instructions as to the law applicable to the facts as they might find them.   That was fairly and correctly done in part of the charge recited in the first specification.   It follows that both specifications of error should be dismissed.

Judgment affirmed.